UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

RICHARD COPE,

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

                    Defendant.

CASE NO. 2:15-cv-01744 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

       This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States

Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkts. 22, 27, 31, 33, 37,

38). Defendant also filed a Notice of Supplemental Support for Defendant's Brief

pursuant to Local Court Rule 7(n) on October 20, 2016 (*see* Dkt. 39).

After considering and reviewing the record, the Court concludes that the ALJ erred in evaluating the medical evidence. Had the ALJ properly considered the medical evidence, the residual functional capacity ("RFC") may have included additional limitations. Because the ALJ committed harmful errors, this matter is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further consideration consistent with this order.

However, the Court finds that plaintiff has failed to meet his burden of establishing that the ALJ demonstrates a generalized pattern of bias against claimants like plaintiff. Accordingly, the Court declines to direct the Commissioner to reassign the case upon remand. Nonetheless, nothing in this Opinion *prohibits* the Commissioner from reassigning the case to a different ALJ upon remand.

<u>BACKGROUND</u>

Plaintiff, RICHARD COPE, was born in 1955 and was 52 years old on the alleged date of disability onset of October 1, 2008 (*see* AR. 216-17, 218-23). Plaintiff completed the 11th grade in high school and has not obtained his GED (AR. 18). Plaintiff completed a printing course and a home inspection course (*id.*). Plaintiff has work experience in construction, in the printing industry, as a home inspector, and forklift operator (AR. 257-63).

According to the ALJ, plaintiff has at least the severe impairments of "chronic obstructive pulmonary disease (COPD) and depression (20 CFR 404.1520(c) and 416.920(c))" (AR. 116).

1    At the time of the hearing, plaintiff was living in a shelter where he had been

2    living for 3 to 4 years (AR. 22-23).

3    PROCEDURAL HISTORY

4    Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42

5    U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

6    U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and

7    following reconsideration (*see* AR. 59-69, 70-80, 83-95, 96-108). Plaintiff's requested

8    hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on

9    September 12, 2013 (*see* AR. 4-56). On September 27, 2013, the ALJ issued a written

10   decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social

11   Security Act (*see* AR. 109-33).

12   

13   In plaintiff's Opening Brief, plaintiff raises the following issues: (1) The ALJ's

14   decision and findings regarding plaintiff's COPD were not based on substantial evidence,

15   misread the medical evidence, improperly excluded relevant evidence, and denied

16   requested subpoenas; (2) The ALJ improperly rejected the opinions from every one of

17   plaintiff's examining or treating doctors; (3) The ALJ's findings regarding plaintiff's

18   credibility are not specific enough to permit judicial review, and contain numerous

19   misstatements of the record; (4) The ALJ improperly failed to consider the fact that

20   plaintiff had been determined to be disabled for purposes of DSHS; and (5) The transcript

21   shows a pattern of bias or prejudice by this ALJ regarding persons such as plaintiff who

22   are on DSHS and have a psychological illness (*see* Dkt. 22, p. 6).

23   

24

1

<u>STANDARD OF REVIEW</u>

2

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

3

denial of social security benefits if the ALJ's findings are based on legal error or not

4

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

5

1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

6

1999)).

7

<u>DISCUSSION</u>

8

**(1)    Whether the ALJ properly weighed the medical evidence.**

9

10

Plaintiff argues that the ALJ erred in his treatment of the medical opinions of Drs.

11

Sanchez, Dolan, Burdge, Basinski, and Chwastiak (Dkt. 22, pp. 9-14).

12

The ALJ must provide "clear and convincing" reasons for rejecting the

13

uncontradicted opinion of either a treating or examining physician or psychologist.

14

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d

15

418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when

16

a treating or examining physician's opinion is contradicted, that opinion can be rejected

17

"for specific and legitimate reasons that are supported by substantial evidence in the

18

record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th

19

Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can

20

accomplish this by "setting out a detailed and thorough summary of the facts and

21

conflicting clinical evidence, stating his interpretation thereof, and making findings."

22

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881

23

F.2d 747, 751 (9th Cir. 1989)). The ALJ may not reject a brief, conclusory opinion from

24

a treating physician if the opinion is consistent with the claimant's testimony and with the

doctor's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

   A.  *Phyllis Sanchez, Ph.D.*

   Dr. Sanchez conducted a Psychological/Psychiatric Evaluation on December 10,

2012 (AR. 2346-52). Dr. Sanchez charted plaintiff's self-reported symptoms and

conducted a mental status examination and clinical interview (*see id.*). During Dr.

Sanchez's interview, plaintiff admitted using methamphetamine in his youth (AR. 2346).

He reported that his depression increased when his wife had a stroke in 2009 (AR. 2346).

As a result of his depression, plaintiff reports waking "up in a cold sweat, dwells on the

past, misses his wife, feels depressed for weeks to months at a time, has no energy, no

motivation, no hope, and gives up easily" (AR. 2347). Plaintiff reported suicidal ideation

"[a]ll the time" but noted he is "not to the point where he has any intent" and "no plans

either" (AR. 2347). On mental status examination, Dr. Sanchez observed that plaintiff

was depressed and tearful at times (AR. 2349). Plaintiff was not within normal limits on

memory, fund of knowledge, and concentration (AR. 2349). On abstract thinking,

plaintiff "did OK on the proverb, but only got a one point answer on the similarity" (AR.

2349).

   Dr. Sanchez diagnosed plaintiff with Major Depression and opined that plaintiff

would have moderate difficulties in a number of areas, including: (1) performing

activities within a schedule, maintaining attendance, and being punctual without special

supervision; (2) performing routine tasks without supervision; (3) adapting to changes in

a routine setting; (4) being aware of normal hazards and taking appropriate cautions;

(5) asking simple questions and for assistance; (6) communicating and performing effectively in a work setting; (7) maintaining appropriate behavior at work; (8) completing a normal work day or week without interruptions from psychological symptoms; and (9) setting realistic goals and plan independently (AR. 2348).

The ALJ noted that Dr. Sanchez "completed a check-box form in December 2012" opining that plaintiff has moderate limitations in most functional areas (AR. 126). The ALJ also observed that Dr. Sanchez "did not provide a narrative explanation" (*id.*). The ALJ gave Dr. Sanchez's opinion "some weight" and found that plaintiff's "reports to her appear exaggerated" (AR. 126). As an example, the ALJ noted that although plaintiff told Dr. Sanchez he "had suicidal ideation 'all the time'", plaintiff "usually denied suicidal ideation with his treatment providers" (AR. 126). The ALJ also found that plaintiff "misrepresented his meth use, telling her the last time he used was in the mid-90s" (AR. 126). Finally, the ALJ discounted Dr. Sanchez's opinion "[t]o the extent she relied on his subjective complaints" (AR. 126).

First, the ALJ suggests that Dr. Sanchez's opinion is inadequate or should be discounted because she used a check-box form (AR. 126). Discrediting a doctor's opinion simply because she used a check-box form is not valid unless that opinion is inconsistent with the underlying clinical records. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014) (noting that "the ALJ was [not] entitled to reject [medical] opinions on the ground that they were reflected in mere check-box forms" where the "check-box forms did not stand alone" but instead "reflected and were entirely consistent with the hundreds of pages of treatment notes"); *see also Neff v. Colvin*, 639 F. App'x 459 (9th Cir. 2016)

1  (unpublished); *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (unpublished).

2  Thus, the ALJ committed legal error to the extent he discounted Dr. Sanchez's opinion

3  because she used a check-box form, particularly where, as here, Dr. Sanchez's opinion

4  was accompanied by a clinical interview and mental status examination.

5        Second, the ALJ discounted Dr. Sanchez's opinion "[t]o the extent she relied upon

6  [plaintiff's] subjective complaints" (AR. 126). According to the Ninth Circuit, "[an] ALJ

7  may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's

8  self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533

9  F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.,* 169 F.3d

10  595, 602 (9th Cir. 1999) (citing *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989))).

11  However, "when an opinion is *not more heavily* based on a patient's self-reports than on

12  clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v.*

13  *Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014) (emphasis added) (citing *Ryan v. Comm'r of*

14  *Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

15        Here, substantial evidence does not support the ALJ's conclusion that Dr.

16  Sanchez's opinion should be discounted because she relied upon plaintiff's subjective

17  complaints. The evidence of record shows that Dr. Sanchez conducted a mental status

18  examination and clinical interview. The Court notes that "experienced clinicians attend to

19  detail and subtlety in behavior, such as the affect accompanying thought or ideas, the

20  significance of gesture or mannerism, and the unspoken message of conversation. The

21  Mental Status Examination allows the organization, completion and communication of

22  these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental

Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted). The record demonstrates that Dr. Sanchez did not base her medical assessment more heavily on self-reported symptoms. Rather, Dr. Sanchez provided a medical source statement based on her observations, the objective results of mental status examinations, and plaintiff's self-reported symptoms. Thus, the ALJ's decision discounting Dr. Sanchez's assessment to the extent it was based upon plaintiff's subjective complaints is not supported by the record as a whole given that Dr. Sanchez conducted objective testing.

Third, the ALJ discounted Dr. Sanchez's opinion because he found that plaintiff "exaggerated" his reports to her (AR. 126). As an initial matter, the ALJ does not provide citations to the record and instead only notes that plaintiff usually reported no suicidal

ideation to treatment providers (AR. 126). The ALJ's lack of citation to the record lacks the level of specificity required by the Court. *See Embrey*, 849 F.2d at 421-22; *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (the ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Regardless, the ALJ's determination is not supported by substantial evidence. Defendant cites to a number of treatment records wherein plaintiff reported no suicidal ideation to support the ALJ's determination that plaintiff exaggerated (*see* Dkt. 27, p. 7 citing AR. 2110, 2118, 2376, 2382, 2385, 2404, 2408, 2417). However, the ALJ did not cite to these treatment notes (*see* AR. 126). Moreover, the ALJ does not explain how plaintiff's reports of suicidal ideation or lack thereof at other medical appointments undermines the fact that plaintiff was experiencing suicidal ideation during his appointment with Dr. Sanchez. Indeed, plaintiff had a prior suicide attempt and reported experiencing suicidal ideation at other appointments (*see, e.g.*, AR. 2258 (noting that plaintiff previously attempted suicide and plaintiff "thinks about suicide a lot now")).

Fourth, the ALJ discounted Dr. Sanchez's opinion because he determined that plaintiff misrepresented his prior methamphetamine use (AR. 126). As an initial matter, the Court finds that to the extent the ALJ relied upon any of plaintiff's self-reports to Dr. Sanchez to discount her opinion—including self-reports the ALJ determined were misrepresentations—the ALJ erred. As noted above, "when an opinion is *not more heavily* based on a patient's self-reports than on clinical observations, there is no

1   evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162 (emphasis added).

2   As previously discussed, Dr. Sanchez's opinion was not more heavily based on plaintiff's

3   self-reports—including self-reports regarding prior drug use—than on Dr. Sanchez's

4   clinical observations and examination. And, in light of the additional clinical

5   observations by Dr. Sanchez, the ALJ's decision to discount Dr. Sanchez's opinion

6   because plaintiff misrepresented the timing of his sobriety is not supported by substantial

7   evidence. Moreover, the ALJ provided only a conclusory statement indicating plaintiff

8   misrepresented his prior drug use (*see* AR. 126). Without further explanation or citation

9   to the record, the ALJ's blanket statement is insufficient to reject Dr. Sanchez's findings.

10  *See Embrey*, 849 F.2d at 421-22.

11

12          Finally, an ALJ may consider inconsistent statements about a claimant's drug use

13  to discount his credibility. *See*, *e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

14  2002); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). However, the ALJ does

15  not explain why reports of prior substance use in 2009 (*see* AR. 2116), and Dr. Sanchez's

16  apparent lack of knowledge regarding that drug use, undermines Dr. Sanchez's opinion

17  regarding plaintiff's mental impairments in 2012. The Court finds that discounting Dr.

18  Sanchez's opinion on this basis does not amount to a specific and legitimate reason

19  supported by substantial evidence. This is particularly the case where Dr. Sanchez

20  checked a box indicating that plaintiff's "current impairments [are not] primarily the

21  result of alcohol or drug use within the past 60 days" (AR. 2348). That answer would not

22  have changed even if Dr. Sanchez was aware that plaintiff had potentially used

23  methamphetamine three years prior to the examination. Accordingly, none of the reasons

24

offered by the ALJ to discount Dr. Sanchez's opinion is specific and legitimate or supported by substantial evidence.

The Court also concludes that the error in the evaluation of Dr. Sanchez's opinion is not harmless. The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2011) (citing *Stout v. Comm'r*, *Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout*, 454 F.3d at 1055-56). In *Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)). Here, because the ALJ improperly disregarded the opinion of Dr. Sanchez in forming the RFC and plaintiff was found to be capable of performing past relevant work based on that RFC, the error affected the ultimate disability determination and is not harmless.

1

2

### B.  Drs. Dolan, Burdge, Basinski, and Chwastiak

Plaintiff also contends that the ALJ erred in his treatment of the medical opinions

of Drs. Dolan, Burdge, Basinski, and Chwastiak (Dkt. 22, pp. 9-14). Dr. Burdge

conducted a nonexamining psychological evaluation of plaintiff and as part of his

evaluation reviewed Dr. Sanchez's examination and clinical findings (*see* AR. 2353). The

Court has already concluded that the ALJ erred by failing to evaluate the medical opinion

of Dr. Sanchez, *see supra*. Therefore, because Dr. Burdge's opinion relies in part on a

review of Dr. Sanchez's medical opinion, the ALJ should reevaluate Dr. Burdge's

opinion anew following remand. In addition, based on the record as a whole, the ALJ

should reevaluate all of the medical opinion evidence anew following remand of this

matter.

3

4

5

6

7

8

9

10

11

12

13

    **(2)**      **Whether the ALJ erred in evaluating plaintiff's testimony and**
                    **statements regarding his alleged impairments and symptoms.**

14

The Court already has concluded that the ALJ erred in reviewing the medical

evidence and that this matter should be reversed and remanded for further consideration,

*see supra*, section 1. In addition, the evaluation of a claimant's statements regarding

limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. §

404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and

statements should be assessed anew following remand of this matter.

15

16

17

18

19

20

21

    **(3)**      **Whether the ALJ erred in failing to consider Plaintiff's DSHS**
                    **disability determination.**

22

Plaintiff also argues that the ALJ erred in failing to consider the DSHS disability

determination (Dkt. 22, pp. 16-17). Plaintiff cites to a Washington State Department of

23

24

1   Social & Health Services "Interim Assistance Reimbursement Authorization" (hereinafter

2   "DSHS Authorization") (AR. 224). As noted by defendant, the DSHS Authorization is

3   not an official notification of disability, but rather a notice of interim assistance (AR.

4   224). The DSHS Authorization indicates that plaintiff is agreeing to allow DSHS to

5   recover some money from the SSA should he be determined disabled (*see id.*). However,

6   the DSHS Authorization does not describe whether plaintiff was determined disabled by

7   DSHS, nor does the DSHS Authorization explain how the agency determines whether

8   claimants are disabled (*see id.*). Absent additional evidence demonstrating that the ALJ

9   ignored significant probative evidence of another agency's disability determination, the

10  ALJ did not err. *See*, *e.g.*, *LeDoux v. Astrue*, No. 3:10-CV-05858-KLS, 2011 WL

11  5023393, at *14 (W.D. Wash. Oct. 18, 2011) (finding the ALJ did not err in failing to

12  consider DSHS disability determination because there was no indication "that DSHS

13  employs either the same or substantially similar standards for evaluating medical

14  evidence, assessing credibility or determining a claimant's residual functional capacity or

15  ability to perform his or her past work or other jobs existing in significant numbers in the

16  national economy"). Nevertheless, as this matter is already remanded for further

17  consideration, plaintiff or the ALJ may further develop the record related to any DSHS

18  disability determination and findings related thereto.

19

20

21

22

23

24

**(4)    Whether the ALJ improperly denied plaintiff's requested subpoenas and improperly refused to admit secondary source material.**

*A. Subpoena Requests*

Plaintiff avers that the ALJ abused his discretion by refusing to subpoena Drs. Stevik and Platter, while admitting their medical opinions as evidence (Dkt. 22, pp. 7-9). Plaintiff does not challenge the ALJ's refusal to subpoena Drs. Brown and Robinson (*see id.*).

When "necessary for the full presentation of a case," an ALJ may either *sua sponte* or at the request of a party issue subpoenas for the appearance and testimony of witnesses and/or the production of documents. 20 C.F.R. §§ 404.950(d)(1) & 416.1450(d)(1). An ALJ has discretion to decide when a subpoena and related cross-examination is warranted. *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983); *see also Tarter v. Astrue*, 2012 WL 1631968 at *3 (W.D. Wash. Apr. 17, 2012) (report and recommendation to reverse and remand), *adopted* 2012 WL 1631887 (W.D. Wash. May 9, 2012). An ALJ abuses such discretion, and violates the claimant's procedural due process rights, if he or she does not subpoena or permit cross-examination of an examining physician who is a "crucial witness" and "whose findings substantially contradict the other medical testimony." *Solis*, 719 F.2d at 301.

The ALJ declined to subpoena Drs. Stevik and Platter, finding that the request did not meet the regulatory requirements and that plaintiff "has not asserted facts that are in question" (AR. 112-13). Rather, the ALJ determined that plaintiff's request to subpoena the doctors addressed "the weight that should be given" to the doctors (AR. 113). Further,

the ALJ determined that plaintiff did not persuasively explain why interrogatories were inadequate to address his concerns (*id.*). Given that this matter is already reversed and remanded to reevaluate the medical opinion evidence, the Court finds that plaintiff's assignment of error—and defendant's argument that plaintiff did not follow proper regulations in requesting the subpoenas—is moot.

Nevertheless, the Court notes that Drs. Stevik and Platter's opinions appear to constitute the primary basis for the ALJ's denial of benefits based upon plaintiff's physical impairments and the ALJ's determination that plaintiff can walk and/or stand for 6 hours in an 8 hour work day (*see* AR. 122, 125). Accordingly, upon remand, should plaintiff follow proper regulatory guidelines and establish that the reports are crucial to the ALJ's decision, denial of the subpoenas may be deemed error. *See Solis,* 719 F.3d at 302 ("Because Solis availed himself of the right to request cross-examination, and because the report was so crucial to the ALJ's decision, we find that the denial of Solis' request was an abuse of discretion."). This is particularly true if plaintiff presents evidence that a treating provider offered an opinion regarding functional physical limitations that contradict Drs. Stevik and Platter.

### B.  Denial to Admit Additional Evidence

Plaintiff also maintains that the ALJ erred by refusing to admit additional secondary source materials, including (1) excerpts of the American Medical Association ("AMA") Guidelines regarding respiratory diseases, including COPD; and (2) "other documents referenced" (*See* Dkt. 22, pp. 6-7, 8-9).

In his decision, the ALJ noted that plaintiff "requested admission of five documents that were electronically submitted but not exhibited" (AR. 113). The ALJ described the documents including: (1) "a 1988 report on nicotine addiction"; (2) a chapter on respiratory system"; (3) an AMA guide to evaluation of respiratory impairments"; (4) "letters addressed to [plaintiff's counsel] dated August 20, 2013, and August 28, 2013, from James Czysz, PsyD, and Keith Sonnanburg, PhD, respectively" whom the ALJ noted had not treated plaintiff nor reviewed his records (AR. 113). The ALJ determined that the records were "not relevant to the claimant and are not 'evidence' as defined by" the regulations, which the ALJ determined relates to "information specific to the individual claiming benefits" (AR. 113).

An ALJ "may receive any evidence at the hearing that he or she believes relates to your claim." 20 C.F.R. § 405.350(b). In addition, ALJs may consider "evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d). The regulations include a non-exhaustive list of samples of "other sources", including other medical sources such as nurse practitioners, educational personnel, agency personnel, and lay witnesses. *Id.*

The Court does not have the benefit of reviewing the secondary source material plaintiff alleges was improperly excluded—only a description of the evidence. Without adequate information, the Court cannot determine whether exclusion of the evidence was legal error. In addition, the Court is not aware of any authority, and plaintiff has cited none, establishing that the ALJ erred by excluding this secondary source material from the administrative record in this case. Nevertheless, the Court need not address plaintiff's

contention because the Court has already determined that the ALJ erred and that this matter should be remanded for further consideration.

### (5)   Whether the ALJ erred in considering plaintiff's COPD.

Plaintiff also generally alleges that the ALJ erred in considering his COPD (*see* Dkt. 22, pp. 6-7). Plaintiff's argument here is not fully developed, particularly because the ALJ determined that plaintiff's COPD is a severe impairment (*see* AR. 116). The Court "cannot manufacture arguments" for plaintiff, and can only review issues argued with specificity in plaintiff's opening brief. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (citation and quotation omitted); *see also Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("We do not address this finding because Carmickle failed to argue this issue with any specificity in his briefing."); *Volkle v. Astrue*, No. C11-1881-MJP-JPD, 2012 WL 2576335, at *3 n.2 (W.D. Wash. June 14, 2012), *report and recommendation adopted*, No. C11-1881-MJP, 2012 WL 2573065 (W.D. Wash. July 2, 2012) (same). Nonetheless, to the extent plaintiff is arguing that the ALJ erred in assessing the medical opinion evidence and resulting functional limitations related to his COPD, the Court has already determined that the ALJ should reevaluate the medical opinion evidence upon remand. *See* Section 1, *supra*. So, presumably, that will include a review of plaintiff's functional limitations related to his COPD.

**(6)** **Whether plaintiff has established that ALJ Kennedy is biased against claimants like plaintiff.**

Finally, plaintiff argues that ALJ Kennedy is biased against plaintiff and claimants like him (Dkt. 22, pp. 12-18). This Court has paid particular attention to this argument as it is being used in several other cases in this district. *See*, *e.g.*, *Smith v. Colvin*, No. C14-1530 TSZ, 2016 WL _____, at *6 n.4, *6-7 n.5 (W.D. Wash. Oct. 14, 2016); *Wrightman v. Colvin*, No. C15-01557 BHS, 2016 WL 4425318, at *1 (W.D. Wash. Aug. 22, 2016); *Yost v. Colvin*, No. C15-1279 TSZ, 2016 WL 2989957, at *11 (W.D. Wash. May 24, 2016). While this Court has already ruled that ALJ Kennedy committed reversible error in this case, it is a far more serious allegation that he is somehow disqualified from hearing future cases involving this plaintiff and potentially other plaintiffs because of an inherent bias. While the Court recognizes that there may come a time when this Court or some other court may need to intervene to address a claim of inherent bias, plaintiff has failed to meet the heavy burden of proving such a claim here.

ALJs who decide social security claims are presumed to be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). This presumption "can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Id.* Moreover, although ALJs occasionally can reveal irritation or anger, "'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women … sometimes display,' do not establish bias." *Rollins v. Massanari*, 246 F.3d 853, 858 (9th Cir. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555–56 (1994)). Instead, a claimant asserting bias must "show that the ALJ's behavior, in the

context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" *Rollins*, 261 F.3d at 858 (quoting *Liteky*, 510 U.S. at 551).The burden of establishing a disqualifying interest "rests on the party making the assertion." *Id.* at 196. That party must show "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" Further, "actual bias," rather than the "mere appearance of impropriety," must be shown in order to disqualify an ALJ. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003).

Plaintiff argues that ALJ Kennedy is biased against claimants like plaintiff (*see* Dkt. 22, pp. 12-18). Specifically, plaintiff argues that ALJ Kennedy "is biased or prejudiced against him and other claimants who (a) raise claims of disability based on mental impairments for which Global Assessment of Function ("GAF") is a common part of diagnosis or evaluation and/or (b) who have received financial benefits from the Washington State Department of Social and Health Services ("DSHS")" (*id.* pp. 12-13). To support his position, plaintiff submitted: (1) decisions by ALJ Kennedy and medical records in 54 other claimants' applications for disability benefits cases decided by ALJ Kennedy; (2) declarations from five attorneys who assert that ALJ Kennedy is biased against claimants like plaintiff; and (3) "additional evidence" including declarations from other claimants who assert that ALJ Kennedy was biased against them and other documents such as medical records for other claimants (*see* AR. 2457-4121). In addition, in his supplemental brief, plaintiff compares ALJ Kennedy's allowance rate with his peers and argues that the negative results indicate that ALJ Kennedy is biased (*see* Dkt. 33, pp. 3-4).

Although not clearly stated, it appears that plaintiff is claiming that ALJ is regularly denying benefits to those persons with claimed mental disabilities who have been found disabled by the Washington State Department of Social and Health Services (*see* Dkt. 22, pages 12-13). But, it is unclear why ALJ Kennedy would be doing this, and this Court declines to speculate what would motivate an ALJ to have such an implied bias. In any event, plaintiff claims that this bias should disqualify ALJ Kennedy from re-hearing plaintiff's claim on remand.

A. *Statistical Comparison Among 54 Prior Decisions*

Plaintiff argues that certain terms in ALJ Kennedy's decisions—"DSHS" and/or "GAF" scores—correlate with particular results among the 54 decisions at issue (*see* Dkt. 22, pp. 17-18). Plaintiff maintains that the statistical evidence is significant and demonstrates:

- 20 of the claimants included in the sample were DSHS recipients and had mental illnesses with GAF scores. Of those 20, only 1 (or 5%) received a favorable decision from ALJ Kennedy.

- Of the 19 decisions denied by the ALJ, plaintiff maintains the ALJ based his decision to deny benefits on "unsupportable legal analysis of conflating the DSHS forms those doctors filled out" with a different form used by defendant.

- Of the 19 decisions denied by ALJ Kennedy, plaintiff argues that the ALJ improperly denied benefits to DSHS/GAF claimants based on an erroneous factual assessment that the claimant could perform work in the past and therefore can perform work since the alleged onset date.

- Of the 54 decisions in the sample size, 26 opinions contained opinions by 37 doctors affiliated with a request for review by DSHS. Of those 37 doctors, the ALJ afforded "little" or "no" weight to 29 decisions, or 78%, while six opinions (or 15.5%) were given "some" weight" and only two opinions were given "significant" or "great" weight. In contrast, in those

same 26 opinions, plaintiff argues that the ALJ gave significant or great weight to 65% of opinions issued by DDS doctors.

- Of the 54 decisions in the sample, 30 (or 55%) referenced GAF scores. Of those 30 decisions, the ALJ gave little to no weight to GAF scores in 24 decisions, and only three decisions were favorable to the claimant.

(Dkt. 22, pp. 12-18).

The Court has carefully reviewed the statistics presented by plaintiff, and finds that plaintiff has not met his burden of establishing ALJ bias.

Initially, the Court notes that several courts have held that ALJ bias cannot be proven by statistical analysis, but rather any ALJ's alleged bias must be judged on a case by case basis. *See*, *e.g.*, *Johnson v. Comm'r of Soc. Sec.*, No. 08–4901, 2009 WL 4666933, at *4 (D.N.J. Dec. 3, 2009) (noting that an ALJ's impartiality should not be judged by statistics of how that judge has previously ruled); *Smith v. Astrue*, No. H–07–2229, 2008 WL 4200694, at *5–6 (S.D.Tex. Sept. 9, 2008) (finding that an ALJ's approval rate of only 7.19 percent was troubling, but insufficient, in and of itself, to show bias).

But, even assuming that statistical evidence is *at all* relevant to the issue of ALJ bias, it is clear that plaintiff has not demonstrated that his sample is random, unbiased and statistically significant. *See*, *e.g.*, *Yost*, 2016 WL 2989957, at *11 (finding plaintiff erred in alleging ALJ bias by failing to demonstrate that samples in sample were randomly selected and statistically sound); *Smith*, No. C14-1530 TSZ, 2016 WL _____, at *6 n.4, *6-7 n.5 (finding the same); *Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011) (collecting cases, including: *Doan v. Astrue*, 04CV2309 DMS (RBB), 2010 WL 1031591,

at *15 (S.D.Cal. March 19, 2010) (finding statistical evidence that ALJ had high rate of denial during a particular time period was insufficient to establish bias without other evidence such as the ALJ's routine misapplication of the law, problematic credibility determinations, or statistics regarding reversal rates).

Instead, plaintiff states that his sample is "likely" random, and represents about 14% of ALJ Kennedy's decisions over an approximately nine month period (Dkt. 22, p. 18 n.21 citing AR. 367-68). In his briefing to the Appeals Council—to which defendant had an opportunity to respond in supplemental briefing (*see* Dkts. 32, 33, 37, 38)— plaintiff suggests that the 54 cases are statistically random because cases are randomly assigned to ALJ Kennedy (AR. 367-68). However, the more relevant question is whether the 54 cases analyzed represent a random selection of the cases that have actually been assigned to ALJ Kennedy. After all, the alleged bias is against this particular ALJ, not the entire panel of ALJs. In his supplemental brief, plaintiff argues that the "17% sample provides fair representation" of the "289 decision 'universe'" of ALJ Kennedy's decisions during the 9 month period in the first three quarters of fiscal year 2013 (*see* Dkt. 33, pp. 3-4). No attempt was made to demonstrate that these 54 cases (or 50 cases depending upon who is counting) are a fair and unbiased sampling of this "universe" of cases.

And there is reason to suggest that it isn't fair and unbiased. The 54 (or 50) additional decisions at issue involve claimants represented by a relatively small number of law firms, including Schroeter, Goldmark & Bender, plaintiff's attorney's law firm (*see* AR. 2457-4121). None of the decisions involve claimants who appeared pro se,

representing a potential sampling bias (*see id.*). Plaintiff has not described how the demographics or case history of claimants represented by the law firms in question compare with the demographics or case history of other claimants who appeared before ALJ Kennedy. Nor has plaintiff identified how the other nine law firms involved were selected. *See Perkins*, 648 F.3d at 903 (rejecting evidence of 57 other claimant's selected by plaintiff's counsel). Also, the statistical evidence provided by plaintiff has little, if any, probative value "because it is not moored to reversal rates or any other objective standard that properly would allow a trier of fact to draw an inference of bias." *See Doan*, 2010 WL 1031591, at *15.

Importantly, as applied to this case, plaintiff has failed to demonstrate that the ALJ's alleged bias affected this particular decision. An ALJ's objectivity should not be judged based solely on whether or not he or she deviates from the mean. Rather, an ALJ's bias, if any, must be demonstrated in the "context of the whole case," and plaintiff must demonstrate that as to this case in particular, the ALJ's bias "was 'so extreme as to display clear inability to render fair judgment.'" *Bunnell*, 336 F.3d at 1115. In short, plaintiff has failed to demonstrate that the data provided were random, unbiased and/or statistically significant. Or as now-retired sportscaster Vin Scully once said, "statistics are used much like a drunk uses a lamp post: for support, not illumination."

   B. *Declaration of Attorneys*

Plaintiff also directs the Court's attention to five declarations from attorneys who have appeared before ALJ Kennedy (*see* Dkt. 22, pp. 22-23 citing AR. 2459-80). Plaintiff

1   argues the declarations support plaintiff's claim that ALJ Kennedy is biased against

2   claimants like him (*see id.*).

3       The declarations offer accounts of their interactions with ALJ Kennedy. Without

4   repeating the various comments and opinions of these declarants, suffice it to say, they

5   make it clear that they do not believe that ALJ Kennedy demonstrated the kind of judicial

6   temperament that we would expect. *See, e.g.*, AR. 2461, AR. 2464, AR. 2469, AR. 2473.

7       A judge should always demonstrate courtesy and respect for the litigants and their

8   counsel. Indeed, all persons involved in our system of justice should do the same. While

9   the proffered declarations are certainly troubling, the evidence falls short of supporting

10  plaintiff's allegations of bias. There is not a single example cited to indicate that any the

11  ALJ's errant comments resulted in a biased decision. Rather, the statements attributed to

12  him amount to "expressions of impatience, dissatisfaction, annoyance, and even anger,

13  that are within the bounds of what imperfect men and women … sometimes display [and]

14  do not establish bias." *Rollins*, 246 F.3d at 858. Furthermore, plaintiff has presented no

15  evidence that with regard to this plaintiff in this case, that ALJ Kennedy demonstrated

16  any particular bias.

17      Therefore, while the Court understands that ALJ Kennedy is not without his

18  detractors, these statements do not provide a basis to conclude that he is incapable of

19  performing his duties in this case.

20

21

22

23

24

### C. Comparison to Peers

In his supplemental brief, plaintiff compares ALJ Kennedy's allowance rate with his peers and argues that the negative results for the 19 filtered "DSHS/GAF" claimants indicates that ALJ Kennedy is biased (*see* Dkt. 33, pp. 3-4).

This Court is hesitant to conclude that a disparity between ALJ Kennedy's and his colleagues' statistics would provide any support for plaintiff's argument of ALJ bias. *See Yost*, 2016 WL 2989957, at *3. As noted by another Court in this district, "[p]laintiff's contention that [ALJ Kennedy's] below-median rate of favorable decisions somehow shows 'bias' ignores the fact that ALJs hear a matter only after benefits have already been denied on initial determination and after reconsideration." *Id.* (citing 20 C.F.R. §§ 404.900(a) & 416.1400(a)). Moreover, ALJ Kennedy's "lower rate of favorable decisions (or reversals) might simply reflect that determinations made initially and/or on reconsideration in this region are of higher quality than elsewhere in the nation, and thus, does not itself substantiate any parsimony or 'bias' on the part of" ALJ Kennedy. *Id.*

This Court would be more concerned if ALJ Kennedy had an eye on his statistical averages when rendering a decision rather than the merits of the particular case before him. We would be remiss if we were to conclude that every judge must fall within some statistical "average" in order to demonstrate his or her dispassionate allegiance to justice.

### D. Additional Materials

Finally, plaintiff directs the Court to "additional medical and other information" allegedly supporting the existence of a pattern of bias against DSHS recipients with GAF scores (*see* Dkt. 22, p 23). Plaintiff makes no argument in support of this additional

evidence, and instead invites the Court to review an additional 382 pages of the record which plaintiff suggests "further demonstrates the ALJ's pattern of routine misapplication of law and problematic credibility determinations" (*see id.*). This Court declines the invitation to seek out gremlins of alleged bias in the attached records and must rely on the arguments presented, not the arguments plaintiff has not presented. *See Carmickle*, 533 F.3d at 1161 n.2.

Based on the forgoing, the Court finds that plaintiff has failed to meet his burden of demonstrating that ALJ Kennedy is biased against him and claimants like him. Thus, the Court will not direct the Commissioner to reassign this case upon remand. Nonetheless, nothing in this Order prevents the Commissioner from reassigning this matter to a different ALJ upon remand.

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for Plaintiff and the case should be closed.

Dated this 1st day of November, 2016.

J. Richard Creatura
United States Magistrate Judge